Please call the next case. Case number 10-1487. He will be Rashid Tillman. All right, counsel, if you could approach, let us know who you are and who you represent. Good morning, Your Honor. My name is Charles Hoffman. I represent the appellant, Rasha Tillman. Okay. Matthew Connors, on behalf of the people of the state of Illinois. What was that again? Matthew Connors. Okay, you guys know the drill. Fifteen minutes per side saves some time for rebuttal. And if we, you know, impede you, we'll give you more time, as obviously we did earlier today. Right. We probably won't be beating you guys up as much as we beat them up. Good morning, Your Honors. My name is Charles Hoffman. I represent the appellant, Rashid Tillman. After a jury trial, Mr. Tillman was convicted of murder and aggravated discharge of a firearm. We've raised four issues on appeal. Today I'd like to address the speedy trial issue. And if time permits, I'd like to address the closing argument issue. I would like to reserve a couple minutes for rebuttal. And I can assure this Court that when you tell me I'm done, I'm done. Okay. You're done? No. Our first claim is that the trial judge abused her discretion when she granted the state's request for an extension of the original speedy trial term, which was going to expire on February 9th, because in this case the state failed to show to the judge that they had exercised due diligence to obtain the presence of their missing witnesses before the speedy trial term expired. The state's motion was filed on January 11th, which was about a month before the end of the speedy trial term, but it wasn't argued until February 1st. And there were three witnesses involved here, Randall Williams, Lynelle Hicks, and Levante Moore. And for purposes of the issue, Williams and Hicks have one factual pattern and Mr. Moore has another. Williams and Hicks had both been served with subpoenas way back in September of 2009, but they failed to appear and warrants were issued for their arrest. The state's motion alleged that since that time, that is since last September, and I'm quoting, attempts have been made to locate and compel their appearance, but at the present time they cannot be located by the state's attorney of Cook County. That's it. That's all the motion alleged. Neither the state's motion nor the prosecutor's argument in support of the motion informed the trial judge what attempts had been made, when were they made, who made them, what did they consist of. There was absolutely nothing. The other thing is the prosecutor didn't tell the court what, if any, attempts had been made to locate Hicks and Williams from the time they had filed their motion on January 11th until they argued their motion on February 1st. Not a word about that. And in the absence of any such facts, we don't see how it was possible for the trial judge to conclude that the state had exercised due diligence to find Mr. Williams and Mr. Hicks. As to Levante Moore, here's what the state alleged. That they had made unsuccessful attempts to serve him with a subpoena, again way back in September, October, November of 2009, and again on January 4th of 2010. However, they did successfully serve Mr. Moore on January 5th with a subpoena. But what Mr. Moore did was, in the presence of the state's attorney's investigator, crumple up the subpoena, throw it to the ground, and announce that he had no intention of complying with it. So, you know, I'm listening to you, but I'm looking at my notes. Rule to show cause, arrest warrant, no bail warrant, subpoenas. What do you want us to do? Handcuff him and just put him in a jail room until the time of the trial? Well, I think these witnesses made clear that they were uncooperative and weren't going to appear. That's clear from the beginning when they failed to comply with the subpoena. So this is, for you, this is creating a bright line. You want a definitive thing set up so that they go down a checklist. If it's not done, the judge tosses the case. No, not quite, Justice Smith. Our argument is that we don't know what the state did to locate and compel Hicks and Williams. But I'm, again, looking at my notes. Rule to show cause, arrest warrant, no bail, subpoenas. What more do you want them to do? I mean, you're saying those are not specific. Well, there's two parts to our argument. One is they didn't give the judge any facts about what they did. We don't know what they did, and neither did the trial judge. The other part of our argument is, if you really think about it, Justice Smith, due diligence has two components. The first component is you obtain the tools that you need to compel the witnesses to come to court. And you're right, Justice Smith, the state did that here. We're not claiming the state did nothing. They served subpoenas. They got rules to show cause. They got arrest warrants. What we don't know is what they did to utilize those tools. The first step of due diligence is to obtain the tools to compel. But the second step is to actually utilize the tools. We don't know what they did with those warrants. Did they take them to the witness's house? Did they take them to the witness's place of work? We don't know what they did because the record is completely barren on any facts. It's one thing to obtain a no-bail warrant. It's a completely other thing to go out and exercise due diligence and serve the warrant. It doesn't do any good to get a warrant if you don't serve it. But you know what their standard procedures are, don't you? If you could educate me, I'm not sure what their standard procedures are. Well, I know them. Okay. But I'm not going to go through them all. But they have standard set procedures that they follow in detail. And they have to report back to their supervisors as to when and how long it took them. And they have to supply notes and things. Justice Smith, if all of the- I'm sitting there. I'm the criminal court judge. I know what they did. Every criminal court judge knows what they did or didn't do. The judge may know what they're supposed to do. But I think a judge should require the State to put on the record what they actually did. Because if the trial judge may know what they did, a judge sitting down at 26th Street may be very familiar. But I don't think a judge can just assume that the State did what they were supposed to do. If you look at- But then it's your burden to show that they didn't do it. I don't think so, Judge. I think the law is clear that the burden is on the State to show that they exercised due diligence. And here is adequate enough. You cannot ask them to do more. I'm not asking them to do more. No, I know what you're asking. What I'm asking them is to tell the trial judge what they did so that she can exercise her discretion. So the normal court down there, he may have 20 cases up that morning. Now, if we add this in, we will now be at 430, and we haven't gotten through 30 cases that day. I don't think it would be that big a burden. And if you look at the cases that we cited in which due diligence was shown, there was no problem with the State in those cases putting very detailed, specific factual assertions on the record about what they did. It's all in the brief, but let me just pick one at random. The Morgan case from this district in 1978. State's investigators made numerous calls to the witness's phone number listed in their files, checked medical records, several trips to an address supplied by public aid, spoke to the witness's brother. The cases go on and on like that. And as a matter of fact, Justice Smith, all four of our cases are from the first district. I know. I read most of them. And those cases show what due diligence looks like. So with regard to Hicks and Williams, we're arguing we don't know what the State did. They may have exercised due diligence. We just don't know because they failed to give the trial judge one fact, one single fact about what they did, other than a very vague assertion that they made attempts to locate the witnesses. Now, it's different as to Mr. Moore. We know what the State did as to Mr. Moore. They served the subpoena, which he crumpled up and threw on the floor. But here's our problem with what the State didn't do as to Mr. Moore. When they filed their motion on January 11th, they put in the motion. He crumpled up the subpoena, said he wouldn't comply. And if he doesn't comply on February 1st, if he doesn't show up, then we'll ask for a rule to show cause and seek a warrant. But, Your Honors, on January 11th, a full month remained on the speedy trial term, which didn't expire until February 9th. Why wait another three weeks to see if Mr. Moore was going to show up, especially when the clock was ticking on Rashad Tillman's constitutional right to a speedy trial? It made no sense for the State to say, yeah, he crumpled up the subpoena, he threw it away, and, you know, if he makes good on his threat in three weeks, we'll go find him. What they should have done in order to protect Mr. Tillman's constitutional rights, which they have a duty to do, reserve Moore the next day with a subpoena with a return date of January 11th. That's a month before the speedy trial term runs. If he makes good on his threat and he doesn't show on January 11th, they can go get him, they know where he is now, haul him into court, and proceed to trial in this case within the speedy trial term. But the State didn't do that. They basically sat around and waited for three weeks while the clock was ticking. Our argument is because the State failed to give the judge any facts at all about what they did with regard to Hicks and Williams, and because we know on the record the State didn't do what they could have done to protect Mr. Tillman's constitutional rights, that the State failed to make a record, which is their burden to show that they exercised due diligence in this case, to find and locate and bring their witnesses into court. And because they failed to show the judge that they had exercised due diligence, she couldn't exercise her discretion because she didn't have the information, and therefore it was error for her to grant the State's motion, and for that reason we're asking this Court to reverse Mr. Tillman's conviction because his rights to a speedy trial were violated. Okay. Now, as to argument, was there testimony at trial where various witnesses indicated that they weren't all that interested in testifying or being a tattletale? Yes. Yes, Justice Levin. The witnesses were clearly uncooperative. How is the argument then, if not specifically not invited comment, how is it not a fair commentary on what came out of the mouths of various witnesses? Well, here's what happened. Why is it so unfair? It's unfair because it's not based on the evidence and it's not a reasonable inference from the evidence, and think about how prejudicial it is to say that the witnesses didn't come to court because they were afraid of the defendant who was charged with the murder. Here's why it wasn't invited. If you look at the record, it's clear that the trial prosecutor really tried to get her witnesses to say they failed to come forward, and every witness failed to come forward. Although they knew the defendant, they didn't come forward for weeks and months until each of them picked up their own case on unrelated charges, and within a day of each of them being arrested themselves, they said to the police, hey, let me tell you about this murder. So defense counsel said, these guys didn't come forward until it was in their own interest to curry favor with the state. That's why they came forward, because they got arrested themselves and all of a sudden it was in their interest to come forward. Well, the trial prosecutor tried to get the witnesses to say they didn't come forward because of fear of the defendant, and she started doing that with leading questions to which objections were sustained. For example, on redirect of Patrick Carter, this is the state's attorney. Counsel asked you about why you didn't talk to the police. Is it safe to talk to the police as a witness? Objection sustained. Are any of the currents for your own safety? Objection sustained. But when she asked Carter a non-leading question, why didn't you talk to the police that night, here's what he said. I just didn't want to talk to them. She tried again on redirect. Why don't you step forward as a witness in a murder case, Mr. Carter? It just ain't something I do. Where's the fear of the defendant in that answer? Now, where's the argument where you're saying that there were, the argument says maybe fear, but where's the argument where it says afraid that the defendant's going to do something about it? Well, the legal standard, I think, from the Mullen case. I'm just trying to follow up on what you said was said in rebuttal. Well, to be fair to the state, there is the Tattle comment, but I'll answer Your Honor's question before I get to that. The question is not whether they named the defendant. The question is whether their comments suggest that the witnesses didn't come forward out of fear of the defendant. So all, it just has to be an implication of the argument. The Mullen case is the leading case, and if you look at Mullen, the prosecutor in that case never named the defendant. We quoted in full the condemned argument from Mullen. But just a few minutes ago you said specifically that, you know, fear of the defendant. It suggested fear of the defendant, and let me tell you what the comments were that we're complaining about. This is the prosecutor's rebuttal argument. Counsel talked at length about nobody come forward. We've got it right here at page 39. I wonder what possible reason somebody had just witnessed one of their friends being gunned down. Maybe, I don't know, fear. They live in the same neighborhood. Who's she talking about? They live in the same neighborhood as the defendant, Rasha Tillman. They have the same acquaintances. Who is she talking about? The witnesses have the same acquaintances as the defendant. They have the same, is it safe to be the one that points a finger? Well, points a finger at who, Justice Levin? At the defendant. All of these comments clearly. But, again, you know, the issue that I have, I know the argument here, and it doesn't specifically say the defendant. You're saying that it's suggestive of it. Absolutely. I understand your argument. But in a case where witness after witness is like, I ain't cooperating here, I don't want to have anything to do with it, isn't this kind of suggested by the evidence itself? I don't think that fear is suggested, because the closest anything came to fear was the tattle comment by Mr. Bowdery. If you live in that neighborhood, you don't want to be somebody who tattles. But here's the problem with the prosecutor's argument that relies solely on that tattle argument. First, it only came from Bowdery. Carter, as I've said before, said, I just didn't want to come forward. And nobody asked Mr. Moore why he didn't come forward. So Bowdery is the only one who made the tattle comment, and yet her argument lumped in all three of the State's witnesses. Yes, Justice Kuczynski. And that wasn't until the trial. That was after the judge had already gone past the speedy trial limit. So the information of fear wasn't available to the judge when she was deciding on the trial. Oh, no, absolutely not. No. She was just going on sort of bare bones minimum motion that had none of this information in it. No, none of this information. And also, as you correctly pointed out before, none of the information of what specific steps they took to justify extending the speedy trial limit. We do know that the witnesses were all uncooperative. We do know that they didn't come forward. But here's what the prosecutor could have argued, Justice Lavin. These witnesses failed to come forward not because they came forward in their own interest because they were arrested, as defense counsel said. They didn't come forward because these are the type of people who don't like to talk to the police. These are people who don't want to cooperate with murder investigations. These are people who don't want to ruin their reputation in the neighborhood by coming forward. That would have been a proper response to defense counsel's closing argument. But that's not what she said. She said the last thing she said to the jurors before they retired to deliberate was, they had the strength and the courage and strength of character to overcome their fear and take that stand and point their finger at the man who killed that juror. Now, none of those words had anything to do with the evidence in this case. Where is the fear? Where is the strength of character? She talked about knowing the ramifications to them for fingering the person they saw do this crime. Where is evidence of any ramifications? As in Mullen, if you look at Mullen, Justice Lavin, if you compare the argument here to the one in Mullen, it's very, very similar. Both of them talk about use your common sense, fear, fear, fear. There were a number of things she could have said that would have been entirely proper, but she didn't say those. And it's also important to consider that defense counsel's objection to this argument was overruled, which obviously left the impression in the jury's mind that somehow this was proper. And, you know, the reason, the case law. At least there was an objection. It was preserved. It was preserved. That's a red letter day. Not only that, Justice Lavin, it's in the post-trial motion. Yeah, I know. That's two red stars. And that's why I'm standing here arguing this issue. But I think it's important that the objections were overruled because that left the impression with the jurors that, you know, the reason for the rule, the reason for the rule about not letting lawyers argue things that aren't in evidence is because under the Holman case, the Supreme Court said the jurors might conclude there's something that the judge and the lawyers are privy to that we're not. So these jurors are sitting there, and they hear about fear and ramifications, and they're thinking, gee, this guy, he must have threatened those witnesses, and that's why they didn't come forward. I know that's your argument, but it strikes me as a bit of a leap. Especially when it comes to the last comments made at the end of trial and rebuttal after everything's done and the so-called heat of the moment. Well, I don't mean to make any leaps. I just want to point out that in Holman they said the reason for the rule is so the jurors don't conclude that there's something they don't know about. Oh, I know. And the other implication it left, which is why it's so prejudicial, is if the jurors conclude that the witnesses failed to come forward because they feared the defendant, I think they're going to view the defendant in a different light and may think this is a guy who's more capable of committing murder. If the people in his neighborhood, including convicted felons like these witnesses, and every one of the state's witnesses was a convicted felon, if even these ex-cons are afraid of Rashed Tillman, gee, certainly more likely that he may have committed this murder. So because there was no testimony about fear, because fear was not a rational and reasonable inference from the actual testimony, we're asking this Court to find that the prosecutor's closing argument was improper and prejudicial, and we're asking you to grant Mr. Tillman a new trial. A new trial, okay. Thank you. Thank you very much. If we could suggest, could you go to the argument first? Excuse me? Yes. Rebello argument issue first? Yes. Okay. If you may, please, the Court. Matthew Connors on behalf of the people of the State of Illinois. With regards to the Rebello argument, the first thing that needs to be discussed is, as you said, Justice Lavin, whether or not there was a specific fear attributable to the defendant. The defense counsel has consistently remarked upon the Mullen case, really hangs his hat upon Mullen as analogous here. What's important about the Mullen case is that there was a specific statement attributing an act to the defendant. If I may quote from that case, why don't they want to get involved? They don't want one of these indicating to a gun in their back. That's not what happened here. We do have witnesses, as well documented throughout their testimony, who are unwilling to come forward. Not only were they unwilling to come forward, both Carter and Moore testified that they actually left the neighborhood on the night of the shooting. We have testimony from Mr. Boudry that he didn't even anticipate testifying in this case. All of these people indicated an unwillingness to testify, didn't think they were going to testify, and attempted to get out of the scene. So the question is then, why? Yes, a completely reasonable inference to draw from that is fear. And I would direct this Court to its previous decision in People v. Cox, where the Court discussed whether the fear pervasive in the neighborhood based upon a shooting, a neighborhood where these people lived, a neighborhood where the shooting occurred. It's on page 37 of the People's Brief. That's much more analogous to what happened here. Here you do have an instance where people lived in that same neighborhood and were simply not willing to go forward. There's no basis in the record to say that that can be attributed to anything specific and not necessarily pinned on the defendant.  No, which renders Mullen irrelevant. Justice Levin directly pointed that out and said, point to one thing that linked defendant to these acts. You talk about being gunned down, running away from the neighborhood. You use your common sense. They live in the same neighborhood. They have acquaintances. Is it safe to be the one to point the finger? The witnesses made clear that they did not think it was safe to be the one to point the finger. It turns to the first issue raised by defense counsel, and that would be whether or not the extension of the speeding trial term was proper. There's a lot of discussion about whose burden it was. The burden is clear. Defendant must establish that the circuit court abused its discretion. So how do we do that? Defense counsel has not argued to this day that the people acted in bad faith. They've never challenged the veracity of the people's comments below indicating that they did take attempts to serve. When asked what more the people did, defense counsel said, well, we just want to see what it is that they did, not that they did anything inappropriate. We do have an additional fact that when Levante Moore was served, that subpoena was served for the 1st of February. To now suggest that people were supposed to advance the case, which they did, to file the motion, that was done in order to do it within the speedy trial term, to give defense counsel the opportunity to know, to give the circuit court the opportunity to know, that Levante Moore had been served. But he indicated at that time that he would be unwilling to testify. The people were not in a position at that point to know whether or not he would, in fact, not show up on the day of the subpoena. To suggest that the people would have to either go out and obtain a warrant for a subpoena that had not yet arrived, or to reset a trial date when they had already advanced the case to set the motion, is simply above and beyond any case that has ever been held before this court. I would draw one last distinction between the case the defendant claims that there was a lack of due diligence, and that would have been in People v. Durham. And in that case, it was a 3rd District case where the people did nothing. There was no reference anywhere in the record that they had attempted to locate an arrest report, I mean a lab report, had made no phone calls, had done nothing. And I would juxtapose that against this case where you did have warrants, rules to show cause, attempts to make service, and in fact successful service on one of those witnesses. So if there's no further questions, for all those reasons, and no state in the people's brief, we ask you to affirm the defendant's convictions. Thank you. I'll also start with the closing argument. In Mullen, counsel said the prosecutor held up a gun. I don't know if it was a gun or a bullet, but if you look at Mullen, the prosecutor didn't say the witnesses don't want one of these, but she didn't say from the defendant's gun or the defendant's bullet. There's no mention of the defendant in Mullen. There's no mention of the defendant's name here. But in both Mullen and in this case, the clear implication that the prosecutor tried to leave with the jurors was that it was fear of the defendant. And I'd also, as I mentioned in my opening argument, miraculously all three of these witnesses overcame their fear the day after they were each arrested, which I think also makes it not a reasonable inference that they failed to come forward out of fear, and all of a sudden their fear left when they each got arrested. On the speedy trial issue, due diligence, the definition this court has given to due diligence, is a continual effort to locate and bring the witnesses into court. And I think if a witness crumples up a subpoena and announces that they are going to not comply with the subpoena, it's not a big burden on the state to simply serve another subpoena for an earlier return date if the defendant's constitutional rights to a speedy trial are ticking away. That's not too much to ask. And I understand I have the burden here to convince this court that it was error that the judge abused her discretion. But in the trial court, the burden was clearly on the state to show the trial judge that they had exercised due diligence. They didn't meet that burden down there, which is what allows me to meet my burden up here. And finally, at the risk of an imperfect analogy, and this goes to Justice Smith's inquiry about didn't the state do a lot, due diligence is a pretty high standard. It's not just did the state do some stuff. I mean, the state has the obligation to make continuing efforts to bring their witnesses into court. And I say again, at the risk of an imperfect analogy, in connection with my argument that due diligence has two components, if my wife asks me to shovel the snow off the driveway, and she looks out the next day and there's still snow there, and she looks out the next week and there's still snow there, and she says to me, what's going on? You said you were going to shovel the snow off the driveway. And I say, well, I've been diligent. The day you asked me to do it, I bought a snow shovel. I got some rock salt. What's the problem? Well, the problem is it's one thing to get the tools you need to do the job. It's another thing to use the tools. I don't think I showed due diligence by simply buying a snow shovel and a bag of rock salt. And I don't think the state shows due diligence by getting a subpoena, by getting an arrest warrant, and then not giving any showing to the trial judge about what they did with those tools. The standard is, if you're going to ask a trial judge to extend the speedy trial term beyond that required by the statute, which the statute designed to implement and protect the defendant's constitutional rights, you have to give the trial judge all the factual information about what you did to compel those witnesses to come into court before the speedy trial term ran. I don't know if the state did that as to Williams and Hicks, and neither did the trial judge in this case. And for that reason, we're arguing that she abused her discretion by granting their motion. And if the court has no questions, I thank you. Thank you. We're adjourned. Thank you for the arguments and briefs.